## THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

TED KNOX,

        Plaintiff,

v.

        Case No. 3:23-cv-01759-GCS

SGT. BEBOUT, DANNY LEE, A.
DEARMOND, LT. TROKEY,
PLACEMENT OFFICER, M.D.
SIDDIQUI, A. CRAIN, RON
SKIDMORE, A. JONES, ROB
JEFFREYS, LT. SCHOENBECK,
WARDEN WILLS, JOLEEN KUHNERT,
A.W. LAWRENCE, YVETTE BAKER,
M.D. KING, STEVEN BOWMAN,
DEANNA KINK, INTERNAL AFFAIRS,
NURSE MELISSA, NURSE
ENGALAGE, N.P. MOLLENHAUR, C/O
GARCIA, JANE DOE MENTAL
HEALTH, and WEXFORD HEALTH
SOURCES, INC.,

        Defendants.

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

    Plaintiff Ted Knox, an inmate of the Illinois Department of Corrections ("IDOC")
who is currently incarcerated at Pinckneyville Correctional Center, brings this action
pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard
Correctional Center ("Menard"). Knox alleges retaliation, deliberate indifference, and
due process claims in violation of the First, Eighth, and Fourteenth Amendments. He also

brings claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Knox alleges that he is well-known to prison officials as a jailhouse litigator. He also suffers from various medical conditions and is morbidly obese. (Doc. 1, p. 6). Due to his various conditions, he was issued several medical permits to include low bunk, low gallery B (no stairs), shower on gallery, and double-cuffing permits. *Id*. He was also issued specialized diabetic footwear. *Id*.

On February 14, 2020, Knox was moved to North Lower cellhouse, cell 208, a cellhouse assigned for prisoners with qualified conditions under the ADA. On December 22, 2020, A. Dearmond informed Knox that she was cancelling his ADA shower permit because he wrote grievances against medical staff. (Doc. 1, p. 7). Dearmond informed

---

[1]   The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and Wexford Health Sources, Inc.

Knox that he needed to stop filing grievances and then they would discuss reissuing the permit. *Id.* She threatened to cancel all his permits if he did not sign the contractual permit acknowledging the cancelling of the shower permit. *Id.* Knox filed a grievance on the matter, which he alleges put Dearmond, Crain, and Siddiqui on notice of his issues with his medical permits. *Id.*

On February 8, 2021, Correctional Officer ("C/O") Parker informed Knox that he had a medical pass to see Dr. Siddiqui in the North Upper cellhouse, on the fifth floor. (Doc. 1, p. 8). Knox informed Parker that he had a low gallery permit and could not walk up the stairs to the upper gallery. *Id.* Knox also spoke to Sergeant ("Sgt.") Bebout, explaining his inability to walk to the North Upper cellhouse, but Bebout denied his request to be seen on the lower gallery and threatened to write an incident report claiming Knox refused the appointment. *Id.* Knox explained his inability to reach the fifth floor, noting pain in his hip and back. *Id.* Bebout, however, refused to accommodate his request to be seen on the lower level. Knox also alleges that the prison and/or Wexford Health Sources, Inc. has a policy of requiring inmates to attend medical visits on the upper levels of the prison and ignoring the physical challenges of ADA inmates. *Id.* Knox wrote a grievance about the incident which he alleges put Bebout, Siddiqui, Crain, the ADA Coordinator, Warden of Programs Lawrence, Wexford, Bowman, and all policymakers on notice of the issues he experienced attending medical appointments. *Id.*

On March 4, 2021, Knox received an outpatient pass and was escorted to the lieutenant's office where he met Defendant Melissa. (Doc. 1, p. 9). She asked Knox if he previously wrote a grievance about cough, chills, and general body aches, and informed

Knox that she was sent to question Knox at the direction of Joleen Kuhnert and A. Crain. *Id*. She also informed Knox that Kuhnert and Crain wanted him to stop writing grievances if he did not have the stated symptoms. *Id*. Knox believes this was an attempt at retaliation because inmates who test positive for the listed symptoms were placed inside North 2 and denied personal property. *Id*. Knox wrote a grievance about this incident which he alleges placed Nurse Melissa, Kuhnert, Crain, Siddiqui, Bowman, and Wexford on notice of his issues. *Id*.

On April 29, 2021, Danny Lee informed Knox that he had a call pass for healthcare with the Nurse Practitioner ("NP") in the North Upper cellhouse, 5 Gallery. (Doc. 1, p. 9). Knox informed Lee that he was physically unable to walk up to the higher level for his appointment and requested an ADA accommodation. He specifically requested to be seen by the NP in the lower cellhouse or in the healthcare unit. *Id*. at p. 9-10. Lee declined Knox's request and informed Knox that he was tired of his numerous requests. *Id*. at p. 10. Knox wrote a complaint letter to Siddiqui, Dearmond, Crain, and Skidmore. *Id*. He also filed a grievance putting Lee, Siddiqui, Dearmond, Crain, Skidmore, and all policymakers on notice of his issues with holding medical appointments on higher galleries. *Id*. Knox also filed a grievance regarding his inability to attend mental health evaluations because he was unable to walk up to the fifth floor. *Id*. On May 4, 2021, Sgt. Harris and a Jane Doe denied him access to the evaluation because it was held in the North Upper cellhouse, and Knox was physically unable to walk up the stairs. *Id*. Both Jane Doe and Sgt. Harris informed Knox he had to walk to the North Upper cellhouse for his evaluation despite previously being told the evaluation would take place in the North

Lower cellhouse. *Id*. Jane Doe mental health professional informed Knox that Sgt. Harris denied her access to the lower-level mental health room, and she could only see him on the upper level. *Id*. Sgt. Harris informed Knox that he was tired of Knox's grievances about policies in the cellhouse and that "they" were working to cancel all his permits. *Id*.

On May 14, 2021, Knox filed a lawsuit about access to diabetic insulin. (Doc. 1, p. 11). On May 18, 2021, Knox was called to the healthcare unit and Dearmond berated him for filing a lawsuit and grievances. *Id*. She yelled at him and stated that she was cancelling his low gallery permit due to his various complaints. *Id*. She acknowledged that "everybody" was mad at him for filing lawsuits and numerous grievances. Sgt. Bebout also yelled at Knox, stating that she told him she was going to see to it that he lost his permits. *Id*. Knox requested a cane from Dearmond if he was going to lose his low gallery permit and Bebout yelled that he was not getting any assistance and ordered him to leave the office. *Id*. Knox previously had grievances pending regarding his low gallery permit and had numerous lawsuits pending against staff at Menard. *Id*. Dearmond and Bebout signed the form to cancel his low gallery permit. *Id*.; (Doc. 1-1, p. 129).

Knox filed a grievance about the loss of his permit and Wills deemed the grievance an emergency. (Doc. 1, p. 11). Knox alleges the grievance put Wills, Dearmond, Bebout, Siddiqui, Crain, the ADA Coordinator, Kink, and Jeffreys on notice of his claims. Wills denied the grievance, and it was appealed to Kink and Jeffreys. *Id*. In addition to the grievance, Knox wrote a letter to Kink and Jeffreys alerting them of the retaliation and his concern that Defendant Lee would "plant" something in his cell. *Id*. at p. 12; (Doc. 1-

1, p. 41). Knox alleges that Kink and Jeffreys acknowledged the letter but denied the grievance. *Id*.

On July 16, 2021, Knox had a legal mail pick-up call pass for personal property and was instructed to report to the personal property department, but the department has very steep stairs. (Doc. 1, p. 12). Shortly after being informed that C/O Parker would pick up the property for him, Bebout entered and yelled at Knox, calling him fat and lazy. She directed Knox to pick up his own mail and warned Knox that she would tell the personal property department to destroy his mail if he did not pick it up himself. *Id*. But C/O Parker delivered the mail to Knox. Later that morning on his way to the law library, Knox requested an ADA walk-ramp from Bebout. She berated him and stated that he would have to walk up the stairs because they took his permits. *Id*. She also yelled that he needed to stop filing grievances and lawsuits. *Id*. Bebout directed him to return to his cell. *Id*. Knox informed C/O Parker of his issues and Parker escorted Knox to the law library at the direction of Lieutenant Mennerich. *Id*. But upon entering the law library, the "drill buzzer" went off and the law library session ended. *Id*. at p. 13.

On July 28, 2021, Knox wrote a grievance against Siddiqui, Crain, Kuhnert, Lawrence, Bebout, and Wexford for denying him access to ADA shower equipment, specifically a shower chair. (Doc. 1, p. 13). He noted that he had been denied access to a shower chair, and thus access to the shower, for seven months. *Id*. He noted he was morbidly obese, suffered from spinal disease, and had diagnosed blood in his urine. *Id*. Knox alleges that Bebout and Harris gave false statements in response to the grievance. He alleges the grievance informed Crain, Siddiqui, and Dearmond that he needed

immediate care for blood in his urine. *Id*. His scheduled medical appointment for August 2, 2021, however, was cancelled due to a lockdown. *Id*. Knox alleges that lockdowns do not stop emergency healthcare, but Skidmore used the lockdown as an excuse to deny Knox care. *Id*. at p. 14. On August 4, 2021, Knox saw King for the blood in his urine. She informed Knox that her prior call line was cancelled due to the lockdown. *Id*. She prescribed him antibiotics and stated she would schedule him for a follow-up. *Id*. But Knox contends that Bebout and Lee refused to allow Knox to attend the follow-up appointment because they refused to inform the doctor that Knox was unable to use the stairs. *Id*. They, again, instructed Knox that he no longer had a low gallery permit and that they would inform the doctor that Knox refused his appointment. *Id*. They also reiterated that they cancelled his permits because of his numerous grievances and lawsuits. *Id*. Knox was denied access to the follow-up. He wrote an emergency grievance which he alleges put Siddiqui, Dearmond, King, Crain, Moldenhaur, Lee, Bebout, Kuhnert, Lawrence, and Wexford on notice of his need for medical care. *Id*.

After Wills reviewed and expedited the grievance, King called Knox to the healthcare unit and reinstated his low gallery and shower permits because she was tired of him filing grievances and lawsuits. (Doc. 1, p. 14). On August 18, 2021, Knox showed Lee his renewed permit during the shower line which included access to a shower chair and handrails. *Id*. Lee yelled at Knox noting that he did not deserve a permit but placed him in a shower and told him to stay there until Lee returned. *Id*. at p. 14-15. Knox remained in the shower for 20 minutes after he finished his shower. *Id*. at p. 15. Knox alleges the shower was hot and stuffy and caused him a headache and trouble breathing.

*Id*. Lee returned Knox to his cell but threatened to place him in North 2 for writing grievances. *Id*. Later that day, Lee threatened to "plant something" in Knox's cell in order to get him thrown out of Lee's cellhouse. *Id*. Knox filed an emergency grievance to Wills and informed internal affairs of the threats. *Id*. Internal affairs and grievance officer Baker denied his requests. *Id*. Wills deemed the grievance non-emergent and Kink and Jeffreys denied the grievance. *Id*.

On September 6, 2021, Lee issued a false ticket against Knox. (Doc. 1, p. 14). Lee placed Knox in shower 29 and another inmate in shower 28, but less than a minute later informed Knox to get out of the shower chair in order to give the chair to the other ADA inmate. *Id*. at p. 15-16. Lee also informed Knox that he was sending him to segregation. *Id*. at p. 17. Knox again filed an emergency grievance and requested that Wills, Bebout, Trokey, and Jeffreys be reprimanded for their failure to protect Knox. *Id*. After the shower, Lt. Trokey and Lee ordered Knox to cuff-up and they walked him to segregation. *Id*. Knox was charged with misconduct, but the Administrative Review Board ("ARB") chair ruled that the charges could not be substantiated. *Id*. Knox alleges that he was placed in segregation without due process. *Id*.

Knox was placed in a cell that he alleges was rusty and had a blood-stained mattress and no pillow. (Doc. 1, p. 16). He suffered from anxiety due to the constant banging and yelling from mentally ill inmates. *Id*. Nurse Engalage denied Knox medical care while in segregation because he was unable to climb the stairs to the infirmary. *Id*. C/O Garcia denied Knox his diabetic snack trays after his insulin shots and refused to contact dietary about the lack of a snack tray. *Id*. Knox requested that Schoenbeck

investigate the grievances about his placement in segregation, and he wrote a timely grievance against Trokey, Bebout, and the placement officer. *Id*. at p. 17. Knox also filed a grievance against Schoenbeck and A. Jones for finding him guilty without an investigation or calling witnesses. *Id*. at p. 17-18. Knox was charged with disobeying a direct order essential to the safety of the prison, but the violation was ultimately reduced because the ARB found the claim could not be substantiated. *Id*. at p. 18; (Doc. 1-1, p. 122, 124).

## PRELIMINARY DISMISSALS

Knox identifies several grievance officials and officials he alleges were put on notice of his need for care due to the grievances he wrote while at Menard. Knox alleges that he wrote grievances which were reviewed by Rob Jeffreys, Warden Wills, Deanna Kink, and Yvette Baker. He also alleges that his grievances put "acting agents" Crain, Dr. Siddiqui, the ADA Coordinator, Mollenhaur, Warden of Programs Lawrence, Bowman, Rob Skidmore, policy and procedure makers, and Wexford on notice of his issues. But there are no allegations to suggest that he interacted with or sought care from these individuals, other than through his written grievances. These officials cannot be held liable simply as high-ranking officials who oversee employees, because supervisory liability does not apply to actions under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nor can individuals who simply responded to grievances be liable for his claims. *See George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007). *See also Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (stating that "the alleged mishandling of [a

prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Further, to the extent that Knox alleges these officials, including Wills, Jeffreys, Bowman, Crain, and Siddiqui, were aware of policies and practices at the prison which prevented him from receiving care, he alleges only in conclusory fashion that these officials should be liable for the policies and practices at the prison. He fails to allege that these individuals participated in creating or implementing such policies. Thus, these individuals are **DISMISSED without prejudice** for failure to state a claim.

Although Knox refers to a Sgt. Harris who declined to let Knox see the Jane Doe mental health professional on Knox's gallery, and instead required Knox to travel to the upper gallery despite his low gallery permit, Knox fails to identify Sgt. Harris as a defendant in the case caption. *See, e.g.*, *Myles v. United States*, 416 F.3d 551, 551–552 (7th Cir. 2005) (noting that to be properly considered a party a defendant must be "specif[ied] in the caption"). Further, as to the Jane Doe mental health professional, Knox only alleges that Sgt. Harris denied her access to the mental health room on the lower gallery, and she could not see Knox on that floor. Nothing in the Complaint suggests that the Jane Doe mental health professional acted with deliberate indifference in treating Knox. Thus, Sgt. Harris and the Jane Doe mental health professional are also **DISMISSED without prejudice**.

Knox also refers to a medical professional King, who he saw on August 4, 2021, regarding blood in his urine. (Doc. 1, p. 14). There is nothing in the Complaint, however, to suggest that King acted with deliberate indifference in providing Knox care. Knox

alleges that King prescribed him medication and indicated that she would follow-up with Knox. Although Knox contends that he was denied that follow-up appointment, he alleges that it was Bebout and Lee who refused to notify King that Knox was unable to walk up the stairs to the appointment. *Id*. Knox fails to allege that King denied him care in any way. He also alleges that King stated she was tired of him filing grievances, but Knox alleges that King reinstated his low gallery and shower permits because she was tired of his complaining. Nothing in the allegations suggests that she acted with deliberate indifference or retaliated against Knox. Thus, the claims against King are also **DISMISSED without prejudice**.

Finally, Knox refers to Internal Affairs, alleging that "Internal Affairs" failed to investigate the misconduct of Danny Lee and failed to heed Knox's warnings about Lee's threats. (Doc. 1, p. 15-16). Knox fails to identify a specific defendant associated with Internal Affairs. Although Knox may certainly proceed with claims against unknown officials (*i.e.*, John Doe #1, John Doe #2, etc.) his claim against "Internal Affairs" is too generic to state a viable claim. Thus, Internal Affairs is **DISMISSED without prejudice**.

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

| Count 1: | **Eighth Amendment deliberate indifference claim against A. Dearmond, Sgt. Bebout, and Danny Lee for failing to honor Knox's permits and denying him access to medical care.** |
|---|---|
| Count 2: | **ADA claim against A. Dearmond, Sgt. Bebout, and Danny Lee for failing to honor Knox's permits and denying him access to medical care.** |

**Count 3:**    First Amendment retaliation claim against A. Dearmond, Sgt. Bebout, and Danny Lee for revoking Knox's permits and denying him access to medical care in retaliation for writing grievances and filing lawsuits.

**Count 4:**    First Amendment retaliation claim against Lee, Trokey, unknown placement officer, and Schoenbeck for issuing a disciplinary ticket and transporting Knox to segregation in retaliation for writing grievances and filing lawsuits.

**Count 5:**    First Amendment retaliation claim against Nurse Melissa, A. Crain, and Joleen Kuhnert for threatening to place him in North 2 segregation isolation for filing grievances.

**Count 6:**    Eighth Amendment deliberate indifference claim against Nurse Engalage and Correctional Officer Garcia for failing to provide him with adequate medical care while in segregation.

**Count 7:**    Fourteenth Amendment due process claim against Lee, Schoenbeck, and A. Jones for finding Knox guilty of the offense issued by Lee without due process (*i.e.*, without sufficient evidence and without allowing Knox to present a witness and evidence).

**Count 8:**    Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having a policy and/or practice of only seeing inmate patients in a specific cellhouse or a higher floor.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

### Severance of Counts 5 and 6

Knox's Count 5 regarding retaliation by Nurse Melissa, A. Crain, and Joleen Kuhnert and Count 6 regarding deliberate indifference by Nurse Engalage and C/O Garcia, are unrelated to the other claims in Knox's Complaint. Most of Knox's Complaint focuses on his access to healthcare due to his ADA requirements and the retaliation he received when he complained about officials' failure to recognize his ADA permits. His claim in Count 5, however, is unrelated to his ADA permits. Instead, he alleges that Nurse Melissa, at the direction of A. Crain and Joleen Kuhnert, threatened Knox with segregation due to a specific grievance they believed he wrote about symptoms. Similarly, his allegations in Count 6 are against different individuals for access to care while he was in segregation. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Counts 5 and 6 into separate cases and will open new cases with different assigned case numbers.

---

[2]    *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*Remaining Claims*

**Counts 1 and 2**

At this stage, Knox states a viable claim in Count 1 against A. Dearmond, Sgt. Bebout, and Danny Lee for their deliberate indifference towards his need for medical permits and medical care. Knox points to several instances where defendants refused to allow Knox to be seen on his gallery and forced him to walk to the higher galleries if he wanted to receive care. They also revoked his permits or refused to honor permits that were issued for his numerous conditions.

Knox also adequately states a claim in Count 2 for violations of the ADA. The claim cannot proceed against the individual defendants, however, because individual employees of the IDOC cannot be sued under the ADA. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be **ADDED** to the case, in her official capacity only, as the proper defendant for Knox's ADA claim.

**Count 3**

Knox also states a viable claim in Count 3 against A. Dearmond, Sgt. Bebout, and Danny Lee for revoking and/or refusing to honor Knox's permits. Knox alleges that on numerous occasions each official refused to honor his permits, specifically stating their actions were due to his numerous grievances and lawsuits. He also alleges that

Dearmond and Bebout revoked his low gallery permit in retaliation for his grievances and lawsuits. Thus, Count 3 shall proceed against A. Dearmond, Sgt. Bebout, and Danny Lee.

## Count 4

As to Knox's retaliation claim in Count 4, Knox adequately alleges that Lee retaliated against Knox by sending him to segregation. Knox alleges that Lee threatened to send him to segregation for writing grievances, and on September 6, 2021, Lee ordered Knox out of the showers and then informed Knox that he was sending him to segregation.

Knox, however, fails to state a viable claim against Trokey, Schoenbeck, or the unknown placement officer. Although he alleges that Trokey helped escort Knox to segregation, there is no indication that Trokey was aware of Lee's retaliation or that he participated in the retaliation efforts. (Doc. 1, p. 16). Further, there is no indication that Schoenbeck retaliated against Knox. He merely declined Knox's request for a lie detector test. *Id*. at p. 17. Knox also fails to allege the placement officer's role in the retaliation, only stating that the placement officer should have known about Knox's need for a low gallery. There is no indication in the Complaint that Knox spoke to the placement officer or had any interaction with the officer prior to or after his placement in segregation. *Id*. Thus, the claims against Trokey, Schoenbeck, and the placement officer in Count 4 are **DISMISSED without prejudice**.

## Count 7

Knox fails to state a viable due process claim. When an inmate raises a procedural due process claim, the Court undertakes a two-part analysis. *See Isby v. Brown,* 856 F.3d

508, 524 (7th Cir. 2017). The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Board of Trustees of Southern Illinois University*, 839 F.3d 668, 673 (7th Cir. 2016)). Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-569 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Knox alleges that he was punished without due process protections, denied witnesses, and that Defendants failed to base their determination on any evidence.

But even if an inmate's due process rights are violated, as Knox alleges here, he still may not have a Fourteenth Amendment claim. An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Knox fails to indicate what punishment he received for the finding of guilt in this case. He only states that he had already suffered in segregation by the time the ARB reduced his punishment. (Doc. 1, p. 16). Knox alleges that he was placed in segregation on September 6, 2021, and his disciplinary charge was reduced by the ARB on January 11, 2022. (Doc. 1-1, p. 99).

Thus, Knox severed only four months in segregation. As to the conditions, he only alleges that he had a stained mattress, no pillow, and that there was banging and yelling throughout the cellhouse. (Doc. 1, p. 16). Relatively short stints in segregation do not, on their own, amount to a deprivation of a liberty interest. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (noting that 70 days was not enough on its own to implicate a protected liberty interest). And the conditions do not appear to be particularly egregious such as to warrant due process protections. Without something more, Knox fails to state a due process claim in Count 7 and the claim is **DISMISSED without prejudice**.

**Count 8**

Finally, Knox states a viable claim against Wexford for the policy and/or practice of providing medical care only in certain locations of the prison. Knox alleges that the practice of only seeing inmates for care in the North Upper cellhouse prevented him from receiving care because he was physically unable to travel to the upper cellhouse.

DISPOSITION

For the reasons stated above, Count 5 against Nurse Melissa, A. Crain, and Joleen Kuhnert and Count 6 against Nurse Engalage and C/O Garcia are severed into two new cases. In each new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The Complaint (Doc 1); and

- The motion to proceed IFP (Doc. 2).

As to the remaining claims, Count 1 shall proceed against Defendants A. Dearmond, Sgt. Bebout, and Danny Lee. Count 2 shall proceed against Latoya Hughes

(official capacity only). Count 3 shall proceed against A. Dearmond, Sgt. Bebout, and Danny Lee. Count 4 shall proceed against Danny Lee, but is **DISMISSED without prejudice** as to Trokey, Schoenbeck, and the placement officer. Count 7 is **DISMISSED without prejudice**. Count 8 shall proceed against Wexford Health Sources, Inc. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants A. Dearmond, Sgt. Bebout, Danny Lee, Latoya Hughes (official capacity), and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Knox. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Knox, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Knox, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Knox is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 17, 2024.**

Digitally signed by
Judge Sison
Date: 2024.01.17
11:04:59 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**